Jake AYERS, Sr., et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Plaintiff-Intervenor, Appellee,

v.

William ALLAIN, et al., Defendants,

Hinds Junior College District and Utica
Junior College, Defendants-Appellees.

No. 84–4575.

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1985.

Isaiah Madison, Leonard McClellan, Greenville, Miss., Alvin O. Chambliss, Jr., Oxford, Miss., for plaintiffs-appellants.

Ben J. Piazza, Jr., Donald C. Woods, Jackson, Miss., for Hinds and Utica.

Wm. Bradford Reynolds, Walter W. Barnett, Marie E. Klimesz, Asst. Attys. Gen., Civ. Rights Div., Dept. of Justice, Washington, D.C., for U.S.

Before RUBIN and REAVLEY, Circuit Judges, and FELDMAN [*], District Judge.

REAVLEY, Circuit Judge:

This Mississippi class-action suit is an assault on Mississippi's system of segregated junior colleges. Defendants admitted at trial that vestiges of *de jure* segregation still exist; hence the trial court concentrated solely on remedies. The court finally approved one of the proposed plans for desegregation, which appellants find objectionable. Appellants contend that the desegregation plan is not a constitutionally adequate remedy to eliminate the vestiges of discrimination. This contention rests on two arguments: first, that the district court committed reversible error in refusing to receive liability evidence from appellants on the nature and extent of the constitutional wrong; and second, that the desegregation plan is too vague to enable a court to assess its constitutional adequacy. Appellants also argue that the district court erred in ruling that appellants must bear their own costs of litigation, including

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

attorneys' fees. We approve the decision of the trial court on the desegregation plan as drafted, but we vacate and remand to that court to consider the plan as implemented.

## I.

The appellants, a class of black citizens in Mississippi, together with the United States as plaintiff-intervenor, sued defendants Hinds Junior College and Utica Junior College, for violation of the Fourteenth Amendment, Title VI, and Title IX, by maintaining a racially dual system of public higher education. The junior colleges in question are located in central Mississippi. Hinds Junior College District consists of a main campus at Raymond and branches at Jackson and Vicksburg. Utica Junior College is located near Utica, about 27 miles from Jackson.

Historically, Hinds has been all-white and Utica all-black. In 1950, the Mississippi Legislature enacted laws providing for separate junior colleges for whites and blacks, and in 1962 declared racial segregation in all its educational institutions to be the law of the state. Under that law, Hinds was designated a white junior college and Utica a Negro junior college.

Today, Hinds's statutorily prescribed geographical district includes the counties of Hinds, Rankin, Warren, and Claiborne. Those same four counties, as well as Copiah Co., contribute financially to Utica. The racial composition of these counties is 40% black. In 1980–81, Hinds enrolled 5,468 full-time and 3,567 part-time students, 1,809 of the full-time students being black, and 844 of the part-time students being black. In the same year, Utica enrolled 967 full-time and 85 part-time students; two of the full-time students and one part-time student were white. In the same year, the administrators and teachers at Hinds were overwhelmingly white, and those at Utica were predominantly black.

Hinds maintained seven dormitories housing about 1,000 students, with two dormitories under construction. Utica had no dormitories until 1981, when construction of a new one was begun. Before that, 134 students were housed in converted campus buildings.

Plans for desegregation have been in the works since 1978, when the boards of trustees of the two colleges formed a joint board to study what could be done to eliminate racial dualism. From among the options proposed, the board chose to establish a unitary district in Hinds, Rankin, Warren, and Claiborne Counties with a multicampus institution serving the needs of all the students in this area. As Utica is located outside that four-county area, the committee determined that its campus should be relocated to Jackson. Appellants opposed the proposal because there was no showing of how the quality of education for black students would be improved. The United States asserted that the committee's proposal did not "sufficiently address the effect that implementation of such a concept would have on enrollment patterns at Hinds and Utica [or] ... the issue of faculty and staff hiring goals at the institutions."

The proposal was modified, yet the United States still did not consider the plan constitutionally adequate. The court then ordered the joint board to submit specific measures for the accomplishment of desegregation as to student enrollment, deployment of biracial faculty and staff, extracurricular programs and activities, courses of study, transportation, and administration of the two colleges. In May 1981 the defendants submitted a report prepared by its consultants, to which both plaintiffs and the United States objected.

A three-judge district court was convened to examine the plan, as well as alternative plans proposed by the plaintiffs and the United States. In September 1983, the court approved the defendants' plan for desegregation of Hinds and Utica. The court noted that defendants were taking steps to increase minority representation on the unified Board of Trustees, a point that had earlier troubled the court.

The plan for desegregation had a number of aspects relating both to student opportunities and to administration. The chief elements are:

1) Desegregation of administrators, faculty, and staff, with a stated goal of achieving at least 20% other-race employment, and with an interim commitment that 50% of persons hired and replacements would be minorities.

2) Desegregation of students, by means of constructing new dormitories and a cafeteria on the Utica campus, equalized salaries for Utica personnel, increasing minority employment by 20%, development of programs and courses peculiar to Utica to attract other-race students, biracial recruitment, and possible use of other-race scholarships.

3) Increased other-race participation in organization and administration, especially on the board of trustees.

The court concluded that it was not convinced that the administrative structure under the defendants' plan would negatively affect the plaintiff class and that the administrative organization "may well be the most effective form for the disestablishment of racial dualism in this district."

## CONTENTS OF THE PARTIES

We view the findings of the district court in the context of the specific discrimination problems that it addressed:

The obligation of the district courts, as it always has been, is to assess the effectiveness of a proposed plan in achieving desegregation. There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance. It is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress toward disestablishing state-imposed segregation. It is incumbent upon the district court to weigh that claim in light of the facts at hand and in light of any alternatives which

may be shown as feasible and more promising in their effectiveness.

*Green v. County School Board,* 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, 20 L.Ed.2d 716, 724 (1968). If the problem is difficult in devising and reviewing plans for desegregating elementary and secondary schools, it becomes more difficult for institutions of higher education where attendance is by choice of the students. In desegregation cases, we may set aside the district court's findings only if we find them to be clearly erroneous. Fed.R.Civ.P. 52(a); *Dayton Board of Education v. Brinkman,* 433 U.S. 406, 417–18, 97 S.Ct. 2766, 2774, 53 L.Ed.2d 851, 861–62 (1977).

Initially, the United States had a number of reservations about the board's plan on grounds of specificity. Yet on this appeal it supports the plan, believing now that the plan should be implemented as approved because the record does not demonstrate that the plan, if implemented in good faith by defendants, will be inadequate to remedy the constitutional violation.

The appellants, however, persist in their objections. Although the district court was satisfied with the specificity of the plan after its order to submit "specific measures," the plaintiffs complain that the plan adopted is still unspecific. The gravamen seems to be that the "plan is conspicuously silent with regard to one of the more obvious and tested methods of attracting white students to the historically black Utica Junior College: placing new, high-demand course offerings exclusively on the Utica campus." Moreover, although "defendants contend that student activities are to be made 'available' to all students 'within the district,' they do not specify what activities will be available on each campus." Appellants argue that the new plan merely replaces segregated *colleges* with segregated *campuses.*

It appears that Utica's role and status within the unitary district is to be extremely limited and temporary. It may be phased out for economic and logistical reasons. That is the fear of appellants, who

wish instead that Utica would be strengthened in all respects. Whether that is required by constitutional considerations we cannot say. We are not persuaded, however, by appellants' contentions that the plan is infirm on its face for lack of specificity. "Though it may lack specific details with respect to the exact steps to be taken in each area of implementation and the precise timing of such steps, the ... plan presents a comprehensive framework for implementation" of desegregation. *Geier v. University of Tennessee,* 597 F.2d 1056, 1064 (6th Cir.), *cert. denied,* 444 U.S. 886, 100 S.Ct. 180, 62 L.Ed.2d 117 (1979).

On this record it cannot be decided whether the board has adopted the best of all plans submitted; such a determination is not within our purview, however. "The issues raised by the [appellants'] suit are complex and not easily resolved. It is possible that an appropriate solution for at least some of the difficult problems may be obtained more readily through the flexibility of the administrative process now in active progress." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (3d Cir.1983). Were we to make a final determination, we would conclude that the district court was not in error in ruling that appellants have failed to make a sufficient showing to have the plan set aside on constitutional grounds.

■ However, the plan was first implemented three years ago, and at this point speculation about the possibilities of future effects of the general plan may be promptly replaced by the facts of experience under the operation of the plan. On remand the trial court should consider the three years of experience with the plan to determine whether it has been implemented and has proved to be effective for the purposes required by the Constitution. When that decision has been made, the court should reconsider whether the plaintiffs are entitled to attorneys' fees.

VACATED and REMANDED.