791 F.2d 1450
 32 Ed. Law Rep. 899
 UNITED STATES of America, et al., Plaintiffs-Appellees,
John F. Knight, Jr., et al., Plaintiffs-Intervenors, Appellees,
v.
The STATE OF ALABAMA, et al., Defendants,
The Alabama State Board of Education; Wayne Teague, State
Superintendent of Education, Defendants-Appellants.
 No. 85-7582.
 United States Court of Appeals,
Eleventh Circuit.
 June 6, 1986.
Corrected Opinion.
Rehearing and Rehearing En Banc Denied July 10, 1986.
 
 Charles S. Coody, General Counsel, Dept. of Educ., Office of General Counsel, Jim R. Ippolito, Associate Counsel, Montgomery, Ala., for State Bd. of Educ. and Wayne Teague, State Superintendent of Educ.
 Robert L. Potts, The Board of Trustees of the Univ. of Alabama, Office of the General Counsel, C. Glenn Powell, University, Ala., for amicus curiae, Bd. of Trustees of Univ. of Ala. & Ind. members thereof in official capacities.
 M. Stanford Blanton, Balch & Bingham, Birmingham, Ala., T.W. Thagard, Jr., Balch & Bingham, Montgomery, Ala., for Auburn Univ. and individual member Bd. of Trustees.
 Wm. Bradford Reynolds, Asst. Atty. Gen., Dept. of Justice, Civil Rights Div., Mark Gross, Attorney, Brian Landsberg, Attorney, for U.S.
 James U. Blacksher, Blacksher, Menefee & Stein, P.A., Mobile, Ala., Gregory B. Stein and Donald V. Watkins, Watkins, Carter & Knight, Montgomery, Ala., for intervenors, John F. Knight, Jr., et al.
 Solomon S. Seay, Jr., Law Offices of Seay & Davis, Terry G. Davis, Montgomery, Ala., for Bd. of Trustees, Alabama State Univ.
 Joe R. Whatley, Jr., Falkenberry, Whatley & Heidt, Birmingham, Ala., for Alabama A&M.
 Walter J. Merrill, Merrill, Porch, Doster & Dillon, Anniston, Ala., for Jackson State Univ.
 Armand Derfner, McClain & Derfner, Charleston, S.C., for Alabama State Univ.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before VANCE and JOHNSON, Circuit Judges, and ALLGOOD*, Senior District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 We review here the district court's decision to enjoin the Alabama State Board of Education ("the Board") and its members from refusing to recertify certain Alabama State University (ASU) teacher education programs. We REVERSE the district court's entry of the injunction against the Board and its members on behalf of ASU, and the entry of the injunction against the Board on behalf of a class of intervening plaintiffs. WE AFFIRM the entry of the injunction on behalf of these intervenors against the Board members acting in their official capacities.
 
 
 2
 * The injunctive order at issue here arises from a July 1983 action originally filed by the United States under 42 U.S.C.A. Sec. 1983 and 42 U.S.C.A. Sec. 2000d et seq. (Title VI) against the state of Alabama, state education authorities, and all state four-year institutions of higher education in Alabama. This suit charged that Alabama impermissibly operates a dual system of racially segregated higher education.
 
 
 3
 The court below granted the motion of Alabama State University, a majority-black institution located in Montgomery, Alabama, to realign as a plaintiff. The court also permitted John F. Knight and other faculty, graduates, employees and students at ASU ("the Knight intervenors") to intervene as plaintiffs, and certified them as representatives for a class including graduates of ASU; black adults or minor children in Alabama presently attending, or eligible to attend now or in the future, any public institution of higher education in the Montgomery area; and black citizens who were, are or will become eligible to be employed by such institutions. As a realigned plaintiff, ASU raised several additional claims, seeking chiefly to challenge Alabama State Board of Education requirements for approval of certain teacher education programs. By joint motion, these issues were severed from the main state-wide action and set for later trial.
 
 
 4
 Meanwhile, during the pendency of these proceedings, the state Board voted not to recertify certain undergraduate and graduate teacher education programs at ASU. On motion by ASU and the Knight intervenors the district court enjoined the Board action to maintain the status quo pending resolution of the substantive questions before it and to preserve its jurisdiction. In reaching its decision the court below concluded that the Board's action was improperly retaliatory--that is, that the Board refused to recertify the ASU education programs in order to punish ASU for bringing suit. It is this injunctive order that comes before us for review.
 
 II
 
 5
 We turn first to certain jurisdictional issues raised by appellant. The state Board argues that the district court did not have jurisdiction to grant ASU an injunction since the latter had no rights under Section 1983 or Title VI and, therefore, no standing to sue for protection of those rights. The Board does not challenge the standing of the Knight intervenors. Further, the Board of Trustees of the University of Alabama, as amicus curiae, urges that the district court was without jurisdiction to enjoin the state Board and its members since the state of Alabama and its agencies are immune from suit under the Eleventh Amendment to the United States Constitution.
 
 
 6
 Although the district court did not discuss these issues in the order before us,[1] we may examine our jurisdiction sua sponte. In Re King Memorial Hosp., Inc., 767 F.2d 1508, 1510 (11th Cir.1985). Logic dictates that parties who seek a preliminary injunction in a suit must have standing to bring suit in the first place. Thus, our first inquiry is whether ASU or the Knight intervenors had standing to sue in the original action under either Section 1983 or Title VI. Second, we must decide, since a state agency is the party enjoined, whether the latter enjoys immunity under the Eleventh Amendment.
 
 
 7
 We agree with appellant that ASU has no standing to sue under either Section 1983 or Title VI. In so doing, however, we cannot accept appellant's broad contention that ASU, as a creature of state government, has no federally protected rights whatsoever under the Constitution or laws of the United States.
 
 
 8
 A line of Supreme Court cases including, e.g., Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939); Williams v. Mayor and City Council of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933); City of Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); and Hunter v. City of Pittsburg, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), stands generally for the proposition that creatures of the state have no standing to invoke certain constitutional provisions in opposition to the will of their creator. A former Fifth Circuit case concluded from this authority that "public entities which are political subdivisions of a state" are "creatures of the state, and possess no rights, privileges or immunities independently of those expressly conferred upon them by the state." City of Safety Harbor v. Birchfield, 529 F.2d 1251, 1254 (5th Cir.1976). However, the latter interpretation--which would bar any suit by a creature of the state against its creator--has not prevailed in this Court.
 
 
 9
 A subsequent Fifth Circuit decision binding on this Circuit has reviewed the Hunter line--including Safety Harbor, supra--and concluded that "these cases are substantive interpretations of the constitutional provisions involved; we do not think they hold that a municipality never has standing to sue the state." Rogers v. Brockette, 588 F.2d 1057, 1068 (5th Cir.1979), cert. denied, 444 U.S. 827, 100 S.Ct. 52, 62 L.Ed.2d 35 (1979). The Fifth Circuit panel relied in part on the Supreme Court's statement in Gomillion v. Lightfoot, 364 U.S. 339, 344, 81 S.Ct. 125, 128, 5 L.Ed.2d 110 (1960), that "a correct reading of the seemingly unconfined dicta of Hunter and kindred cases is not that the state has plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations, but rather that the state's authority is unrestrained by the particular prohibitions of the constitution considered in those cases." Id.
 
 
 10
 Thus, no per se rule applies in this Circuit.[2] In assessing the standing to sue of a state entity, we are bound by the Supreme Court's or our own Court's determination of whether any given constitutional provision or law protects the interests of the body in question. However, if no such determination has been made, it is our task to review de novo whether the state entity has any rights under the particular rule invoked.
 
 
 11
 In the instant case, the law is clear that ASU, as a creature of the state, may not raise a Fourteenth Amendment claim under Section 1983.[3] As long ago as 1939, the Supreme Court in Coleman, supra, 307 U.S. at 441, 59 S.Ct. at 976 (1939) (dicta), indicated that "[b]eing but creatures of the State, municipal corporations have no standing to invoke the contract clause or the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator." See also Town of Ball v. Rapides Parish Police Jury, 746 F.2d 1049, 1051 n. 1 (5th Cir.1984). ASU argues, however, that since the Supreme Court has more recently determined that municipalities and other local governing bodies are "persons" who may be sued under Section 1983, Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1977), they are logically also persons who may bring suit under this section. The former Fifth Circuit, however, has squarely rejected this argument:The Supreme Court's holding in Monell is that by enacting 42 U.S.C. Sec. 1983, Congress intended to make municipalities and other political subdivisions amenable to suits brought under that section. The Monell decision does not call into question the principle that a city or county cannot challenge a state statute on federal constitutional grounds.
 
 
 12
 Appling City v. Municipal Elec. Authority of GA., 621 F.2d 1301, 1308 (5th Cir.1980), cert. denied, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980).[4] We are bound by this decision, which extends logically to other creatures of the state such as state universities. ASU thus has no standing to sue or to seek to enjoin the Alabama state board of education under Section 1983 and the Fourteenth Amendment.[5]
 
 
 13
 We turn next to the question of whether ASU has a right to sue the state under Title VI. To our knowledge, no court has decided this issue.[6] We conclude that no such right of action exists.
 
 
 14
 Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C.A. Sec. 2000d. In Hardin v. Adams, 760 F.2d 1158, 1163-64 (11th Cir.1985), cert. denied sub nom. Grimmer v. Hardin, --- U.S. ----, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985), this Court determined that state universities such as ASU are agents or instrumentalities of the state. Nothing in Title VI or its legislative history suggests that Congress conceived of a state instrumentality as a "person" with rights under this statute. Title VI provides for a comprehensive scheme of administrative enforcement, and the Supreme Court has implicitly recognized a private right of action for individuals injured by a Title VI violation.[7] Absent any indication of Congressional intent to grant additional rights under this statute to non-private state subdivisions against the state itself, we decline to infer such a right of action by judicial fiat.
 
 
 15
 Our conclusion that ASU has no standing under Section 1983 and Title VI to seek the injunction sub judice does not end our inquiry. The standing of the Knight intervenors remains unchallenged. Thus, we must next determine whether or not their request for a preliminary injunction against the state board of education or its members is barred by the Eleventh Amendment. We hold that injunctive relief against the Board itself is so barred, but that such relief against Board members in their official capacities is permitted.
 
 
 16
 Again, we begin our analysis with Section 1983. In general, the Eleventh Amendment bars suits by citizens against a state.[8] Two exceptions to this rule apply: (1) a state may consent to suit in federal court, and (2) Congress may, under certain circumstances, abrogate a state's sovereign immunity. Atascadero v. Scanlon, --- U.S. ----, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). One further doctrine, first set out in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), permits state officials to be sued in their official capacities for prospective relief under certain circumstances, despite the Eleventh Amendment bar. See Kentucky v. Graham, --- U.S. ----, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985).
 
 
 17
 The instant case does not fall under either of the first two exceptions. Alabama has not consented to suit under Section 1983. Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1977) (per curiam). Further, the Supreme Court has held that Congress did not intend Section 1983 to abrogate a state's Eleventh Amendment immunity. Graham, supra, 105 S.Ct. at 3107 n. 17; Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Thus, the Knight intervenors are barred from seeking this injunction against the state Board under Section 1983.
 
 
 18
 However, in an injunctive or declaratory action[9] grounded on federal law, parties may overcome the state's immunity by naming state officials as defendants. Graham, supra, 105 S.Ct. at 3107 n. 18. The intervenors' motion for a preliminary injunction satisfied this requirement by seeking to enjoin "the Alabama State Board of Education and its members, from failing to approve teacher training programs at Alabama State University [emphasis added]." The motion did not specify whether the intervenors sued these Board members in their official or personal capacities. Although we do not encourage such omissions, the Supreme Court has indicated that "[t]he course of proceedings will typically indicate the nature of the liability sought to be imposed." Id. 105 S.Ct. at 3106 n. 14; Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985).
 
 
 19
 We think it clear that in this case the intervenors sought to enjoin Board members in their official capacities as state officers. The Board members' decision not to approve the teacher education programs at issue was an official action consonant with their view of official duty, not one undertaken by individuals acting independently of their offices. Thus, an act representing the execution of government policy inflicted the injury in this case and may be enjoined despite the Eleventh Amendment bar. See Monell, supra, 436 U.S. at 694, 98 S.Ct. at 2037.
 
 
 20
 Since we determine that the Eleventh Amendment permits the Knight intervenors to secure an injunction against state Board members under Section 1983 and the Young exception, we need not reach the difficult question of whether the Board could properly be enjoined under Title VI. We turn finally to a review of the injunction itself.
 
 III
 
 21
 An injunction may be reversed on appeal only for abuse of discretion by the district court. United States v. Jefferson County, 720 F.2d 1511 (11th Cir.1983). The Board maintains that it was prejudiced by insufficient notice and the "sudden" conversion by the district court of what was originally a temporary restraining order (TRO) proceeding into a preliminary injunction hearing.
 
 
 22
 The sufficiency of notice prior to the issuance of a preliminary injunction is a matter left within the discretion of the trial court. Corrigan Dispatch Co. v. Casa Guzman, 569 F.2d 300, 302 (5th Cir.1978). In this case, the district court had no opportunity to exercise its discretion by ruling on the question of whether notice was sufficient, since appellant did not appear to object, seek a continuance, or in any other way protest the scheduling of the preliminary injunction hearing. This Court generally will decline to review issues not raised in the district court. Harris Corp. v. National Iranian Radio, 691 F.2d 1344, 1353 (11th Cir.1982).
 
 
 23
 In any event, we are not persuaded on the merits that the one to three days' written notice (depending on which version is accurate) that appellant received of appellees' motions for injunctive relief was insufficient. Fed.R.Civ.P. 65(a), which governs notice in such cases, provides only that notice must be given; it does not specify how much notice is necessary. As appellant suggests, Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 434 n. 7, 94 S.Ct. 1113, 1121 n. 7, 39 L.Ed.2d 435 (1974), does indicate that "[t]he notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." (In Granny Goose, the defendant received only same-day informal notice of the hearing by telephone.) But appellant here does not demonstrate persuasively that it was prejudiced by short notice, nor does it show how its argument would have been materially different with more warning. A district court is not at leisure to permit those against whom injunctions are sought to sharpen their arguments indefinitely.
 
 
 24
 Appellant's argument that the lower court erred in converting what was originally a temporary restraining order hearing into a preliminary injunction proceeding is similarly unavailing. Again, the Board failed to complain of the alleged error to the district court. Further, since a TRO and a preliminary injunction are somewhat similar, it is not uncommon to find that the two have not been properly distinguished. See, e.g., Fernandez-Roque v. Smith, 671 F.2d 426, 429 (11th Cir.1982). The former Fifth Circuit has indicated that "[w]here the opposing party has notice of the application for the temporary restraining order, such order does not differ functionally from a preliminary injunction. Dilworth v. Riner, 343 F.2d 226, 229 (5th Cir.1965). In short, we cannot conclude that the conversion of a TRO hearing to a preliminary injunction hearing--particularly in the case at bar, in which appellees' motions in one way or another mentioned a preliminary injunction as well as a TRO--is so radical a procedure that it is presumptively an abuse of discretion. With no showing of actual prejudice to appellant from the conversion, we must decline to hold the district court in error.
 
 
 25
 Finally, we turn to the Board's argument that appellees failed to meet their burden of establishing a substantial likelihood that they would prevail on the merits of the controversy.[10] Specifically, appellant challenges findings made by the district court: (1) that the Board's failure to approve ASU programs was discriminatory and retaliatory, and (2) that the faculty experience requirement for approval of teacher education programs challenged by ASU in the severed action was potentially discriminatory.
 
 
 26
 We agree that the latter finding cannot support injunctive relief since the likelihood of success on "the merits" considered there solely involves the merits of ASU's severed claims, and we have concluded that ASU has no standing to bring such claims. Further, we regard the finding of retaliatory motive by the Board as simply immaterial to the question of whether a preliminary injunction should issue, since a plaintiff in seeking such an injunction is not asked to establish, among the four factors, anything at all about the motive for the enjoined act.
 
 
 27
 Nevertheless, we hold that the trial court's entry of the preliminary injunction sought by the Knight intervenors against the Board was entirely appropriate. The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. Corrigan Dispatch, supra, 569 F.2d at 302. See also University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1980). Preliminary injunctive relief may be necessary to insure that a remedy will be available. Gresham v. Windrush Partners, Ltd., 730 F.2d 1417, 1424 (11th Cir.1984), cert. denied sub nom. Windrush Partners v. Metro Fair Housing Services, --- U.S. ----, 105 S.Ct. 249, 83 L.Ed.2d 187 (1984). We accept as unchallenged the district court's factual conclusion that:
 
 
 28
 [t]he total effect of the Board's non-approval of most of ASU's teacher education programs if left unredressed, will be devastating. Without new students, the College of Education will be forced to close its doors within three years. In the meantime, the college's faculty, as well as the faculty of the College of Arts and Sciences, will be displaced. The attractiveness of ASU as an unaccredited institution, both to black and prospective white students, will be non-existent.[11]
 
 
 29
 Given this finding by the lower court, which is entitled to substantial deference, see Anderson v. City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), it is clear that even the partial demise of ASU would impede the ability of the trial court--and this Court on review--to remedy any violation of law proved in the state-wide action originally brought by the United States and joined by the Knight intervenors. The trial judge was evidently persuaded that the intervenors had a substantial likelihood of success on the merits in the latter action, particularly since the judge, who had heard argument in the state-wide case when the injunction was entered, later held in the plaintiffs' favor. Although we do not intimate anything with respect to this Court's ultimate holding on the merits, we are satisfied that the Knight intervenors made out a case sufficient to support a preliminary injunction.
 
 
 30
 Accordingly, we AFFIRM the court's entry of this injunction, on behalf of the intervenors, against the members of the state Board in their official capacities. We REVERSE the district court's entry of any injunction on behalf of ASU, or against the state Board itself.
 
 
 31
 ALLGOOD, Senior District Judge, concurring specially:
 
 
 32
 I concur in the judgment of the court, and add the following:
 
 
 33
 No matter how artfully phrased, demands by predominately black universities, or by persons attempting to assert their interests, which draw their students, faculty and staff from predominately white market areas, for preferential treatment or status as vicarious victims of prior discrimination, presuppose that such universities have some legally protectable interest in remaining predominately black, and that the predominately black university must be one of the mechanisms through which prior unlawful racial separation and its vestiges are corrected. State created institutions have no such right, and the State is not limited in that way. It may well be that problems with the quality of some public educational institutions are so pervasive and ingrained that black students will be hurt, not helped by the perpetuation of those institutions.
 
 
 34
 This case could go a long way toward deciding the future of the university system in this State.
 
 
 35
 If, under appropriate standards and legal principles, liability of the State of Alabama, or any of its institutions is upheld, an issue not before us on this appeal, the District Court will be charged with approving an appropriate remedy, giving due deference to suggestions made by state authorities. See generally Swann v. Charlotte Mecklenburg Board of Education, 402 U.S. 1, 15-16, 91 S.Ct. 1267, 1275-76, 28 L.Ed.2d 554 (1971). If, in that event, in submitting a plan the State concludes that the most effective, educationally sound, and least expensive manner to remedy a violation is to close some colleges, or to merge them under the boards of the State flagship institutions, I see no constitutional or statutory barriers to that being done. Cf. Ayers v. U.S., 769 F.2d 311 (5th Cir.1985). However, that question must be left for another day. In the meantime, all parties to this expensive suit have a duty to and should strive for a negotiated solution to it.
 
 
 
 *
 Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 In its memorandum opinion in the state-wide action, however, the lower court said:
 The contention that ASU and A&M are creatures of the State of Alabama and, as such, lack standing to sue the defendants in this case requires little discussion. In Washington v. Seattle School District No. 1, 458 U.S. 457 [102 S.Ct. 3187, 73 L.Ed.2d 896] (1982), the Seattle, Washington School Board--no less a creature of the State of Washington than ASU and A&M are creatures of the State of Alabama--sued the State of Washington under the Fourteenth Amendment. There the Supreme Court held that the State had violated the Equal Protection Clause of the Fourteenth Amendment by the challenged legislative action. The dissent by Justice Powell never once suggested that the school board lacked standing to bring the lawsuit. Further, in the view of the court, Monell v. NYC Dept. of Social Services, 436 U.S. 658 [98 S.Ct. 2018, 56 L.Ed.2d 611] (1978), makes it clear that as bodies corporate, ASU and A&M are "persons" within the meaning of 42 U.S.C. Sec. 1983.
 
 
 [2]
 Cf. City of South Lake Tahoe v. California Tahoe Regional Planning Agency, 449 U.S. 1039, 1042, 101 S.Ct. 619, 621, 66 L.Ed.2d 502 (1980) (White, J., dissenting from denial of certiorari). Justice White indicated that a per se rule prohibiting a political subdivision from raising constitutional objections to the validity of a state statute was inconsistent with Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), in which one of the appellants was a local board of education
 But see City of New York v. Richardson, 473 F.2d 923, 929 (2d Cir.1973); P. Bator et al., Hart and Wechsler's The Federal Courts and the Federal System (2d ed.) 182 (1973), in which a per se rule is contemplated. See also Aguayo v. Richardson, 473 F.2d 1090, 1100 (2d Cir.1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974), for an indication of the confusion surrounding this issue.
 
 
 [3]
 By its terms, of course, Section 1983 itself creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. City of Oklahoma City v. Tuttle, --- U.S. ----, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). Thus, our focus here is directly on Fourteenth Amendment rights
 
 
 [4]
 See also Commonwealth of Pa. v. Porter, 659 F.2d 306, 327 n. 3 (3rd Cir.1981) (en banc) (standing recognized on other grounds): "[S]tates were never deemed to fall within the class of those for whom Congress created a remedy when it enacted Sec. 1983.... Allowing a state to bring suit, against its own instrumentalities and against its own officers, for their alleged violations, under color of state law, of federal rights belonging to the very state which it is suing, turns the statute on its head."
 
 
 [5]
 Washington v. Seattle School Dist. No. 1, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1981), is not inconsistent with this position. There, a local school district challenged on Fourteenth Amendment grounds the constitutionality of a state initiative that sought to end the local school district use of mandatory bussing to achieve desegregation. The Supreme Court did not address the issue of the school board's standing to sue, although Justice Blackmun's opinion for the court did note that "[w]hile appellants suggest that it is incongruous for a State to pay attorney's fees to one of its school boards, it seems no less incongruous that a local board would feel the need to sue the State for a violation of the Fourteenth Amendment." Id. at 487-88 n. 31, 102 S.Ct. 3203-04 n. 31
 We are persuaded that Seattle School District may be harmonized with the conclusion of this Court that a creature of the state normally has no Fourteenth Amendment rights against its creator. The former Fifth Circuit in Rogers explained that the Hunter line "adhere[s] to the substantive principle that the Constitution does not interfere with a state's internal political organization." Rogers, supra, 588 F.2d at 1070. But Seattle School District does not trench on a state's political prerogatives. It simply holds that once a state's political organization is in place, the state may only re-organize that structure (such as a state's delegation of certain educational decision-making powers to local school boards) consistently with the constitutional guarantee of equal protection. See Seattle School District, supra, 458 U.S. at 479-82, 102 S.Ct. at 3199-3201.
 
 
 [6]
 We note that at least five justices determined in University of California Regents v. Bakke, 438 U.S. 265, 287, 98 S.Ct. 2733, 2746, 57 L.Ed.2d 750 (1978), that Title VI proscribes only those racial classifications that would violate the equal protection clause. However, we are not persuaded by this that, because ASU has no Fourteenth Amendment rights, it necessarily has no Title VI rights. The Court's analysis in Bakke makes it clear that a decision on Title VI grounds is, nevertheless, distinct from an exercise in constitutional interpretation. See id. 438 U.S. at 281, 98 S.Ct. at 2743
 
 
 [7]
 See Cannon v. University of Chicago, 441 U.S. 677, 696-97, 99 S.Ct. 1946, 1957-58, 60 L.Ed.2d 550 (1978)
 
 
 [8]
 The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), established that the amendment also proscribes suits by citizens against their own state
 
 
 [9]
 The intervenors' motion for a preliminary injunction against a state entity, of course, is not identical to an action for injunctive relief against such a body. In the latter case, the act to be enjoined is the alleged violation of federal law sued upon. In the former situation, however, the injunction may issue against an act that is not itself alleged to be a violation of law, but one that will instead disturb the status quo sufficiently to make a remedy for the violation of law doubtful. We assume, despite this distinction, that the Young exception applies similarly in both cases
 
 
 [10]
 To secure a preliminary injunction, a plaintiff must establish four factors: (1) a substantial likelihood that the plaintiff will prevail on the merits, (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the plaintiff outweighs the harm to the defendant, and (4) that the grant of an injunction will not disserve the public interest. Johnson v. United States Department of Agriculture, 734 F.2d 774, 781 (11th Cir.1984). Before this Court appellant disputes only the lower court's conclusions on the first point
 
 
 [11]
 The Board at most argues that any harm to ASU resulting from the action of the former was self-inflicted--that is, that ASU provoked disapproval of its programs by its "blatantly defiant attitude toward regulations duly adopted by the State Board of Education." Whether the Board was justified in its decision not to recertify the programs at issue is again immaterial here. We simply conclude that the Board's decision, if it is not enjoined, will render a remedy in the main action meaningless