**CHABAD–LUBAVITCH OF GEORGIA, Rabbi Yossi New, and Rabbi Yossi Lerman**

v.

**Joe Frank HARRIS, Governor of Georgia, Michael J. Bowers, Attorney General of Georgia, Max Cleland, Secretary of State of Georgia, Luther Lewis, Acting Director, Georgia Building Authority.**

Civ. No. 1:90–cv–2730–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 11, 1990.

Gerald L. Pouncey, Jr., Morris, Manning & Martin, Atlanta, Ga., Nathan Lewin, Miller, Cassidy Larroca & Lewin, Washington, D.C., for plaintiffs.

Janet E. Bradford, Office of Georgia Secretary of State, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This case alleging violations of the First Amendment is before the court on Plaintiffs' motion for a temporary restraining order.

Plaintiffs filed the complaint, this motion, and a supporting memorandum on Friday, December 7, 1990, requesting a hearing on Monday, December 10, 1990. Defendants responded with a brief filed in the afternoon of December 10, 1990. A hearing was held the same day. Plaintiffs filed a supplemental memorandum on the morning of December 11, 1990, and Defendants filed a supplemental memorandum the afternoon of December 11, 1990.

This dispute arises from Plaintiffs' attempt to maintain a menorah on the plaza in front of the State Capitol building in Atlanta, Georgia during the eight days of Chanukah.[1] Plaintiffs are a Hasidic Jewish group based in Georgia and two of its rabbis. Rabbi New testified that Chabad–Lubavitch of Georgia is a group dedicated to reawakening and educating other Jews and the public.

In December of 1989, Plaintiffs erected the fifteen foot high steel menorah which is the subject of the present dispute on the plaza. The menorah was accompanied by a bright yellow sign which reads "HAPPY CHANUKA from CHABAD OF GEORGIA." Plaintiffs' Exhibit 2. The menorah was lit in a religious ceremony and remained on the plaza for the eight days of Chanukah. Each day it was re-lit for thirty to forty-five minutes. Prior to placing the menorah on the plaza in 1989, Plaintiffs sought permission from the Georgia Building Authority, which, along with the Governor's office, has authority over the Capitol grounds. They received permission from Defendant Luther Lewis, Acting Director of the Georgia Building Authority. The Director of the Authority was in the hospital at that time.

While the menorah was displayed, Stanley Gunter of the Governor's staff noticed it. He testified that he mentally noted that it raised concerns regarding the establishment clause of the First Amendment and resolved to check it out if another request

---

1. The court notes the varying spellings of "Chanukah" and adopts that favored by Plaintiffs in their memorandum.

came the next year. During the same period, Mr. Gunter also observed a live nativity scene in the rotunda of the Capitol. The nativity scene was surrounded by a Christmas tree, reindeer, gifts and a Santa Claus. The Georgia Building Authority had sponsored and organized the display.

In anticipation of the Chanukah holiday in 1990, an employee of Chabad telephoned Mr. Gunter and requested permission to erect the menorah on the plaza as in the previous year. A request was also made to repeat the candlelighting ceremony.

On November 1, 1990, Governor Joe Frank Harris sent a letter to Attorney General Michael J. Bowers requesting that he review and analyze whether the rotunda display, the menorah or the proposed Chanukah candlelighting ceremony violated the establishment clause. Plaintiff's exhibit 8.

The Attorney General sent Governor Harris an opinion letter. It stated an understanding that the 1990 rotunda display would consist of a Christmas tree with gifts and a live nativity scene, to be sponsored by the Georgia Building Authority. The 1990 rotunda display would begin with a ceremony which would include religious music and prayers. The Attorney General concluded that due to the dominance of religious symbols, the planned rotunda display would violate the First Amendment prohibition against the establishment of religion. As to the Plaintiffs' activities, the Attorney General opined that performance of the candlelighting ceremony, which includes display of the menorah for a short period in the plaza area designated as a public forum, was not violative of the establishment clause. However, he opined that display of the menorah for the entire eight days of Chanukah created an impermissible appearance of State sponsorship. Joint Exhibit 1.

On November 14, 1990, Mr. Gunter telephoned Chabad and related the Attorney General's opinion that the display throughout Chanukah would be unconstitutional. Thus, permission was denied. However, a candlelighting ceremony, including use of the fifteen-foot menorah, was approved for December 18, 1990. It is planned to consist of opening prayers, the lighting of the menorah, and a choral presentation of apparently religious songs.

The rotunda display has been modified, apparently in light of the Attorney General's letter. It will consist only of a Christmas tree to be decorated with bows and snowflakes, and gifts under the tree. The tree will be unveiled in a ceremony in the rotunda. A Methodist minister will perform the invocation, two choirs will sing a mixture of secular and religious songs of their choosing, and the Governor's wife will give the benediction.

The Georgia Building Authority is an arm of the government of the State of Georgia. At the Authority's annual meeting on July 14, 1988, the subject of a policy in regards to the use of public grounds surrounding the State Capitol was raised by John Ballard of the Department of Law of the State of Georgia. The minutes of the meeting, which are a public document, reveal that a policy was passed. That policy reads in pertinent part:

These policies concern the casual, temporary presence of members of the public in or about the buildings and grounds of the State Capitol and of other facilities owned or served by the Georgia Building Authority in the vicinity of the State Capitol....

The sidewalks and patios of the Capitol are designated as a public forum, i.e. a place for speech and expressions of opinion. The patios at either side of the front, plaza entrance of the Floyd building are designated as a public forum. Other common areas may be designated as a temporary public forum or a limited public forum.

Use of areas as a public forum shall not interfere with the normal operations of State government, including safe, unhindered passageway for all persons. A sidewalk may be deemed hindered if two persons may not proceed conveniently abreast at a normal distance....

\*    \*    \*    \*    \*    \*

No one shall hang banners or flags, or otherwise afix [sic] or place objects upon

the trees, statues, walls, and other property of the grounds.

The evidence and statements of counsel at the hearing indicated that private individuals have never been allowed to place displays in the plaza area except as part of an ongoing demonstration or event; the one exception is the eight-day placement of the menorah last year.[2] Since the adoption of the July 1988 policy, no one (except Chabad) has asked for permission to erect a display. In fact, Mr. Lewis testified he had no specific recollection of the 1988 policy; he and Mr. Gunter agreed that the reason Chabad's request had been denied was the Attorney General's opinion that maintaining the menorah for eight days would violate the establishment clause.

Chabad meets three of the four requisites for a temporary restraining order without serious question: irreparable harm is presumed in relation to first amendment violations; no harm to the State appears to be likely; and the public interest is not adversely implicated. *See United States v. Alabama,* 791 F.2d 1450, 1459 n. 10 (11th Cir.1986). The issue upon which this dispute rests, therefore, is whether Chabad is likely to succeed on the merits in showing a first amendment violation.

Plaintiffs allege a violation of their rights under the First Amendment of the United States Constitution. The elements of Plaintiffs' case are simple: first, that the display of the menorah is speech; second, that the plaza is a traditional public forum; third, that Defendants, under color of state law, refused Plaintiffs permission to erect the menorah based on the content of its message. Defendants offer two defenses. First, they allege that to allow the maintenance of the menorah in the plaza by Plaintiffs would constitute an establishment of religion in violation of the establishment clause of the First Amendment. Second, Defendants contend that no content-based restriction is being imposed because a content-neutral policy of the Georgia Buildings Authority prohibits private

citizens from placing or affixing anything to public property or land. The court will address each of Plaintiffs' assertions, and then the defenses, *seriatim.*

■ Both sides agree that the menorah is a symbol. It is well-established that symbols are squarely within the ambit of protected speech. Symbols which have been held protected include flags, *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), black armbands, *Tinker v. Des Moines Indep. School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), flag salutes, *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and creches, *McCreary v. Stone,* 575 F.Supp. 1112, 1122 n. 5 (S.D.N.Y.1983), *affirmed on this issue specifically,* 739 F.2d 716, 723 (2d Cir.1984). Use of symbols in religious ceremonies, moreover, has been upheld as speech within the context of the First Amendment. *See, Widmar v. Vincent,* 454 U.S. 263, 269 n. 6, 102 S.Ct. 269, 274 n. 6, 70 L.Ed.2d 440 (1981) (citing cases). The display of the menorah constitutes speech.

■ Public fora are areas which have been dedicated through either affirmative governmental act or long usage to public debate. *See, United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1706–07, 75 L.Ed.2d 736 (1983). Joint exhibit 1, an opinion letter written by the Georgia Attorney General, admits that the plaza in question has been designated a public forum. Additionally, the plaza, the parties agree, has been used repeatedly in demonstrations and rallies. Consequently, under the reasoning of *Grace,* the plaza is a public forum.

■ Turning to Defendants' defense that maintenance of the menorah violates the establishment clause, the court notes that this attempted limitation is content-related. In order to restrict First Amendment speech in a public forum based on its content the State must meet the test of strict scrutiny: *i.e.,* Defendants must show

---

**2.** By affidavit, submitted to the court only very late in these proceedings, Defendants offer evidence concerning past occasions upon which objects affixed or placed on the plaza were removed pursuant to the policy.

that the restriction is narrowly tailored to serve a compelling state interest. *Widmar*, 454 U.S. at 270, 102 S.Ct. at 274–75. Defendants assert that the need to comply with the establishment clause represents a compelling state interest. The establishment clause can represent a compelling state interest, but only if the proposed speech actually violates the clause. *Widmar*, 454 U.S. at 271, 102 S.Ct. at 275.

■ Defendants cite *County of Allegheny v. A.C.L.U.*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) and *Kaplan v. City of Burlington*, 891 F.2d 1024 (2d Cir. 1989) for the proposition that allowing a religious symbol to be displayed by private citizens in a public forum proximate to a seat of government violates the establishment clause. *Allegheny*, however, did not concern a public forum. 109 S.Ct. at 3104 n. 50. The creche and menorah at issue in *Allegheny*, although they belonged to private citizens, were substantially cared for and maintained by county employees. The latter was even the setting for a county sponsored Christmas carol program. 109 S.Ct. at 3094, 3097. *Kaplan* is not binding authority; it extended *Allegheny* from the non-public forum into the public. 891 F.2d at 1031. Without that extension of *Allegheny*, the *Kaplan* Court admits, prior law precludes establishment clause challenges to private speech in a public forum. 891 F.2d at 1027 (discussing *McCreary*, 739 F.2d at 723). This court agrees instead with the reasoning of the dissenting judge in *Kaplan*.

> [P]ermitting religious speech in a public forum in and of itself 'does not confer any imprimatur of state approval on religious sects or practices' any more than permitting political speech conveys governmental endorsement of a political group.

891 F.2d at 1033; *accord, A.C.L.U. v. Wilkinson*, 895 F.2d 1098, 1102 (6th Cir.1990) (citing with approval the dissent in *Kap-*

*lan*); *McCreary*, 739 F.2d at 723. As the Supreme Court recently noted, "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect. We think that secondary school students are mature enough and are likely to understand that a school does not endorse or support student speech that it merely permits on a nondiscriminatory basis." *Bd. of Educ. of Westside Comm. Schools v. Mergens*, —— U.S. ——, 110 S.Ct. 2356, 2372, 110 L.Ed.2d 191 (1990) (plurality opinion). Similarly, the court rejects the notion that the citizenry of Georgia are likely to mistake a menorah labelled as the property of Chabad for a state sponsored event. At this point, Plaintiffs appear likely to prevail on the establishment-of-religion argument.[3]

Defendants alternatively argue that disallowing the maintenance of the menorah is permissible under a non-content related policy which places reasonable restrictions on the time, place and manner of speech in the plaza area. Defendants had produced a policy of the Georgia Building Authority, adopted at the annual meeting of the Georgia Building Authority on July 14, 1988, and published in the minutes thereof. The policy states that placement of any object on the property of the grounds by members of the public is prohibited. Defendants' Exhibit 1, p. 2. So far as the record thus far reflects, with the exception of the menorah last year, no one except Chabad has ever applied for or maintained a private display in this area.

Plaintiffs challenge the application of the policy to their request for permission to display the menorah on three grounds. First, Plaintiffs argue that the policy violates due process because it has been kept secret, depriving Plaintiffs of notice of the policy. This argument ignores the fact that the policy was published in the min-

---

3. The court emphasizes that this dispute is before the court on a motion for a temporary restraining order. Although the court held a hearing, the testimony presented there is far from complete. Moreover, it is supplemented by representations made by counsel. The court especially emphasizes that it is not making a final determination of the substantive issues in this case based on this showing. Rather, the court is merely assessing Plaintiffs' showing of their probability of success on the merits.

utes of the Authority's annual meeting. Second, Plaintiffs allege discriminatory application of the policy. This argument fails because, with the exception of Chabad's request last year, no private parties have triggered the policy by requesting to place anything on the plaza.

Third, Plaintiffs argue that their request was initially denied based on its content, and that Defendants offered the policy only as a *post hoc* rationalization of the decision already made, citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In that case, the defendant United States Department of Transportation offered *post hoc* rationalizations of its decision to build a highway through a park, and the court rejected them. *Overton Park*, 401 U.S. at 419, 91 S.Ct. at 825. The Court spoke in the context of the District Court's decision to completely ignore the administrative record and rely instead solely on the affidavits presented at trial. *Overton Park*, 401 U.S. at 419, 91 S.Ct. at 825. However, the affidavits rejected in *Overton Park* were not legal but factual. They concerned factual findings regarding the feasibility of variations in the highway's path. *Overton Park*, 401 U.S. at 417, 91 S.Ct. at 824. In contrast, Defendants here present a *post hoc* legal argument. In the context of a motion for injunctive relief, valid legal authority prohibiting the action sought to be performed will not be ignored simply because it arrives late. The fact that the policy had no place in the initial decision is unimportant where the policy is valid and bans the activity which Plaintiffs seek the court to affirmatively permit, and there is no evidence of discriminatory enforcement.

"[T]he government may enforce reasonable time, place and manner regulations as long as the restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Grace* 461 U.S. at 177, 103 S.Ct. at 1707. The policy in this case is content-neutral. There is no evidence of selective enforcement, except once in Plaintiffs' favor. The Christmas tree inside the rotunda area does not prove selective enforcement.

The Plaintiffs' request was for use of the plaza area, which is an established public forum; the rotunda is not. The Plaintiffs are private citizens seeking to promote a predominantly religious symbol; the Christmas tree is a mixed secular-and-religious symbol which is not predominantly religious, sponsored by the State of Georgia. Safety and aesthetics are valid reasons to keep public areas free of physical display objects. Moreover, the ban is narrowly tailored to those concerns. Defendants permit the use of displays in the public areas during an ongoing event, such as the candlelighting ceremony.

Accordingly, Plaintiffs' motion for a temporary restraining order is DENIED.

SO ORDERED.