SOUTHERN COOPERATIVE
DEVELOPMENT FUND, et
al., Plaintiffs-Appellees,

v.

Louis E. DRIGGERS, et al.,
Defendants-Appellants.

No. 82–5305.

United States Court of Appeals,
Eleventh Circuit.

Feb. 4, 1983.

Rehearing and Rehearing En Banc
Denied March 23, 1983.

F. Craig Richardson, Jr., Ross, Hardies, O'Keefe, Babcock & Parsons, Nancy E. Stroud, Boca Raton, Fla., Fred Bosselman, Edward F. Ryan, Keith A. Klopfenstein, Jr., Chicago, Ill., for Manatee.

James W. Jones, Chris R. Ottenweller, Steven J. Hoffman, Arnold & Porter, Washington, D.C., Morris W. Milton, Williams & Milton, St. Petersburg, Fla., for plaintiffs-appellees.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

This is an appeal from a summary judgment, 527 F.Supp. 927, entered in favor of the plaintiffs on two counts which alleged that the defendants, Manatee Board of County Commissioners, Manatee County, and individual County Commissioners, abridged plaintiffs' rights to due process in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution (Count 1), and plaintiffs' rights to due process under the Florida Constitution (Count 4), in refusing to approve a preliminary subdivision plat. The court granted an injunction and directed the defendants to issue the plat to the plaintiffs. The defendants assign error in the court's findings that the applicable regulations had been complied with and that they therefore violated an administrative duty to approve the plat; that there were no genuine issues of material fact that precluded the entry of summary judgment; and that the denial of the plaintiffs' application was arbitrary and capricious. We affirm.

Plaintiffs Southern Cooperative Development Fund, Inc. (SCDF), Small Farm Development Corporation (SFDC), and Manatee County Community Development Corporation are associated with a joint private-public program called the Family Farm Cooperative Program (FFC Program) whose purpose is to foster the creation and development of agricultural cooperative communities as a means of addressing rural poverty by making it possible for low-income and disadvantaged persons interested in agriculture to own and operate small family farms. The program is funded by a combination of government grants and low-interest loans, private sector loans, and internally generated revenues. Plaintiff Rutledge is a resident of Manatee County who applied for and was eligible to participate in the FFC Program.

In 1979 SCDF purchased a 1631 acre tract of land near the Myakka-Wauchula Road, approximately six miles from the unincorporated town of Myakka and twenty five miles from the city of Bradenton, Florida. The property is in the unincorporated area of East Manatee County and is zoned for agricultural use. The SFDC representatives contacted officials of the Manatee County Planning Department, the county agency principally responsible for land planning and development, to discuss the establishment of the agricultural cooperative and to determine what county requirements would apply to the project. The Planning Department advised SFDC that it would be necessary to prepare a subdivision plat and obtain approval of the Manatee County's Board of County Commissioners in accordance with Manatee County's Subdivision Regulations.

Under the Subdivision Regulations a developer must submit pre-application plans for review with the Planning Department, the Health Department, the Highway and Engineering Department, and the Utility System, prior to making an application for subdivision approval. Plaintiffs prepared and submitted a detailed pre-application plan describing the proposed agricultural community. They subsequently received permission from the Planning Department to submit an application for preliminary plat approval. A plat application, titled the Long Creek Subdivision, was submitted on February 1, 1980, and showed a subdivision of 49 ten-acre tracts, 4 one-acre tracts, and two tracts larger than 460 acres. As a result of discussions with the county staff and agencies, plaintiffs agreed to modify the design of some streets within the subdivision and to improve a portion of the Myakka-Wauchula County Road abutting plaintiff's property. They also agreed to change dead-end streets to cul-de-sacs and established setbacks for a power line ease-

ment. A revised plat reflecting the changes was submitted on February 29, 1980. As required by the Subdivision Regulations, the Highway and Engineering Department, the Health Department, and the Utility System reviewed the application for "conformity with all County regulations" and expressed no objections. The Planning Department, as required, recommended to the Manatee County Planning Commission (a public board appointed to advise the Commission on subdivision and zoning matters) that preliminary plat approval be granted, noting that the Long Creek Subdivision "meets all requirements of preliminary plat review" and that the other county departments had "no objections to the preliminary plat." The Planning Commission recommended to the County Commission that the plat be approved. Notwithstanding its compliance with all relevant county ordinances, SFDC's project was a subject of dissent among residents of Manatee County. At the first meeting of the Commission on the Long Creek Subdivision application on March 29, 1980, many members of the all-white community complained that the participants in the FFC program would be low-income blacks and Spanish-Americans and that the program was a federal "give away". During the hearing Commissioner Driggers wanted to consider factors other than compliance with the Subdivision Regulations because although the plat complied with the regulations he felt that this was not a "normal" subdivision. Rather than approve the plat, the Commission directed the Planning Department to undertake an additional study of the Long Creek Subdivision. This was accomplished and the Planning Department once again concluded that the SFDC's plat application complied with the Subdivision Regulations.[1] This report was submitted to each Commissioner before the May 1 hearing and noted that the "Long Creek Subdivision appears to meet all requirements of the Manatee County Zoning Ordinances and Subdivision Regulations..." On May 1, 1980 the Commission

voted unanimously to disapprove the plat. Although Section 23 of the Manatee County Planning Act expressly requires the Commission to publicly state its reasons for disapproval of the plat, neither the Commission nor any of the Commissioners gave any reason for disapproving the plat.

Plaintiffs filed suit on May 30, 1980 and undertook discovery. Depositions of the Commissioners established that the Commission accepted the fact that the plat complied with the County's Subdivision Regulations. Plaintiffs filed a motion for partial summary judgment. The defendants did not controvert the fact of SFDC's compliance with the Subdivision Regulations.

On July 2, 1981 the district court entered an order finding that only factors contained in the Subdivision Regulations could constitute grounds for denial of the plat application, and since the Commission had failed to state reasons for its May 1, 1980 denial, the district court directed that "the County Commission should be and is afforded the opportunity to again consider Plaintiffs' plat application within the guidelines set forth above (the Subdivision Regulations 'enacted pursuant to the Manatee County Planning Act, Chapter 63–1559 ... which is attached ... as Exhibit B')." These were the Subdivision Regulations in effect at the time that the plat application and the suit were filed.

On August 11, 1981 the Commission again considered the plaintiffs' plat application. At the meeting the commissioners remained silent on the merits of the application. The conclusions of the Planning Department in their new review of the application were similar to those found in the first staff report in regard to the public facilities problem. After comments by the planning staff, plaintiffs' counsel, and an attorney representing local residents, the Commission proceeded immediately to vote unanimously against the subdivision. The Commission then instructed their legal staff to prepare a written order of their decision.

---

1. An impact analysis which dealt with matters not included in the Subdivision Regulations such as school administration, medical services, and road conditions was also submitted to the Commission.

Shortly thereafter, the attorney representing the County in this litigation returned to the meeting with the order denying preliminary plat approval.[2] The order made findings of fact that the road access to the proposed subdivision would be unsafe and inadequate; that public school facilities made necessary by the proposed development were not available and were not planned to be constructed; that necessary public or private facilities and sewers were inadequate; that there was no proximity to recreation and shopping facilities and schools and the extra traffic could not be handled safely; and that the proposed subdivision would constitute urban sprawl.[3]

Based on these findings the Commissioners determined that the application did not meet either the requirements of the Subdivision Regulations in effect at the time of the initial consideration of the application on May 1, 1980, or the requirements of the

Development Code.[4] The Commissioners further determined that the proposed plat would be in violation of Section 336.05(2) of the Florida Statutes which, they argue, authorizes a county commission to reject a plat if road access is not adequate or safe, and in violation of Section 235.193, Florida Statutes, which, they argue, authorizes denial of a subdivision application if public school facilities are not available or will not be made available concurrent with development. Finally, the Commissioners decided that the subdivision was not consistent with the Manatee County Local Government Comprehensive Plan.

On December 3, 1981, following the Commission's second denial of SFDC's plat, the district court granted plaintiffs' motion for summary judgment on Counts 1 and 4, entered declaratory judgment for plaintiffs and ordered Manatee County to approve the plat. The defendants' cross-motion for

2. Since none of the Commissioners expressed reasons at the hearing, and since under the Florida "Sunshine Law," Fla.Stat.Ann. § 286.011 commissioners may only discuss official business in public meetings, it is clear that the Order was not prepared by the Commission, but was apparently prepared by counsel in anticipation of this litigation.

3. The Order contained the following findings of fact:
 1. The only road that provides access to the proposed subdivision is Wyakka-Wauchula Road, otherwise known as Nine-foot Road. For a distance approximately two miles to the south of the property and five miles to the north of the property this road is less than one standard lane in width, consisting only of patches of asphalt some eight to twelve feet wide. For the reasons stated in the staff report, the Board finds that the road access to the proposed subdivision would be unsafe and inadequate.
 2. The proposed subdivision would add between sixty (60) and seventy (70) students in grades 2–8 to a school having an enrollment of two hundred fifty-two (252) and a capacity of two hundred seventy-five (275). Funds are not currently available to expand the school. For the reasons stated in the staff report, the Board finds that public school facilities made necessary by the proposed development are not available in the area which is proposed for development and are not planned to be constructed in the area concurrently with the development.

3. Because of the extremely remote location of the proposed subdivision and the facts set forth in the staff report, the Board finds that the following necessary public or private facilities and services are inadequate:
 (a) emergency medical services;
 (b) fire protection;
 (c) law enforcement;
 (d) traffic circulation;
 (e) education.
 4. The Board finds that the proposed subdivision is not located in close proximity to neighborhood recreation and shopping facilities and schools; is not designed to have convenient and easy access to highways, arterial streets, and major collector streets with direct connections to major recreation, shopping and working areas; and is not located where necessary transportation facilities are adequate to handle the expected additional traffic safely.
 5. The Board finds that the proposed subdivision would constitute urban sprawl, would be located in the eastern portions of the East County sector where public services can least easily be provided, and would create a "leap frog" pattern of development.

4. The current subdivision regulations are part of the Manatee County Comprehensive Zoning and Land Development Code adopted April, 1981 pursuant to state law which requires the county to adopt a comprehensive plan prior to July 1, 1979. All regulations thereafter are required to be consistent with the comprehensive plan. The Florida Local Government Comprehensive Planning Act of 1975, §§ 163.3161 et seq., Florida Statutes (1981).

summary judgment on those counts was denied. The district court granted a stay pending appeal of its injunction.

The issues are sharply drawn. The defendants contend that the board's denial of the plat application was justified under the Subdivision Regulations in effect at the time the application was filed; was justified under the provisions of the Development Code, enacted after the plaintiffs' plat application had been filed and after this litigation had been instituted; and was justified under the provisions of Florida Statutes, Section 336.05(2)[5], relating to the inadequacy of road access, and Section 235.-193[6], relating to inadequacy of schools.

The plaintiffs contend that since Manatee County enacted detailed and comprehensive Subdivision Regulations with which plaintiffs complied, the Commission had no discretion to disapprove the plat for reasons not contained in the Subdivision Regulations, nor could their disapproval be based upon the later enacted Development Code.

■ To put the case in proper perspective, we must, at the outset, reject the defendants' argument that this case involves a challenge to local land use laws, and therefore the standard enunciated in *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) should apply, i.e., whether the action of the Commission was arbitrary and capricious. The plaintiffs do not challenge the exercise of legislative function by Manatee County, or the validity or legality of the zoning ordinances. On the contrary, the plaintiffs urge that the Subdivision Regulations be

applied as written. What we are called upon to decide is whether the Commission's actions were authorized as a matter of Florida law, and if so whether their actions were in violation of the Due Process clause of the Fourteenth Amendment.

■ The district court held that "Manatee County must base its approval or disapproval of plat applications upon the regulations and requirements contained in the Subdivision Regulations, and not upon any broad powers of discretion. As such, the County Commission does indeed act in an administrative, and not a discretionary, capacity." Defendants take issue with this holding. They argue that even assuming that only the Subdivision Regulations in effect at the time of the initial application apply, under Florida law the regulations of subdivisions require the use of reasonable discretion by the Commission in the application of standards and requirements to the specific circumstances of the subdivision application. They point to the preamble to the Subdivision Regulations[7] as authority for the position that prefatory language reserving discretion to provide for the general health, safety and welfare was sufficient to sustain their action. We disagree. The preamble contains no standards with respect to subdivision approval. It merely sets forth the underlying purpose for enacting the Subdivision Regulations. The language in the preamble cannot serve as an independent source of authority for disapproving plats. This would permit the Commission to hold in reserve unpublished requirements capable of general application

5. Section 336.05(2), Florida Statutes, provides that:
"The Commissioners are authorized to refuse to approve for recording any map or plat of a subdivision when recording of such plat would result in duplication of names and streets or roads or when said plat, in the opinion of said Commissioners, will not provide adequate and safe access or drainage."

6. Section 235.193, Florida Statutes, provides that:
"(4) The local governing body is empowered to reject development plans when public school facilities made necessary by the proposed development are not available in the

area which is proposed for development or are not planned to be constructed in such area concurrently with the development."

7. The Subdivision Regulations prefatory statement of the public purposes of the regulations, states in part, ". . . to provide for the harmonious development of the county . . . [and] to insure that each new residential subdivision results in an attractive living environment, which will maintain its value over the years." Further, that its purpose is "to secure adequate provision for light, air, open space, recreation, transportation, potable water, flood prevention, drainage, sewers and other sanitary facilities."

for occasional use as the Commission deems desirable.

▮ Defendants also rely on an access requirement in the Subdivision Regulation which provides: "No subdivision shall be approved unless its street system is connected to an arterial highway by a public road which is county or state maintained." It is undisputed that the proposed plat satisfied this requirement since the subdivision connected to a county road, which in turn connected with an arterial highway. But the defendants contend that this is not enough. They base their discretion, they say, to deny this plat application because the Myakka-Wauchula county road was in such poor condition that it did not fulfill the minimum standards of design and maintenance. We think it is clear, however, that the defendants cannot impose *ad hoc* requirements regarding the condition of county roads adjacent to proposed subdivisions in order to implement the purpose of the Subdivision Regulations.

▮ We agree with the district court that *Broward County v. Narco Realty,* 359 So.2d 509 (Fla.App.1978) enunciated the principle of Florida law that is controlling here. In that case even though Narco had complied with all of the legal requirements for platting its land, the Commission contended that it still had the discretion to approve or to refuse approval of any plat. The court rejected this argument saying:

> All persons similarly situated should be able to obtain plat approval upon meeting uniform standards. Otherwise the official approval of a plat application would depend upon the whim or caprice of the public body involved.
>
> ... the property owner has done all the law required of him to entitle his plat to be recorded. At that point any discretion in the County Commission vanished.

Defendants maintain however that *Narco* must be read narrowly because the only principle that it established was that where a local governmental body *stipulates* that all legal requirements of the plat approval process are met, there is no discretion in the Commission. But it did not establish the principle that a Commission's action in reviewing a plat application is ministerial instead of discretionary in nature. We are unimpressed with this argument. Here the Commissioners admitted that the plat complied with the Subdivision Regulations and the case is therefore in the same factual posture as *Narco.* To argue that there is a difference between compliance with subdivision requirements established by stipulation in *Narco* vis-a-vis by an uncontroverted showing *sub judice,* is a bit of hyperbole in which we will not indulge.

Defendants further submit that *Narco* has been misinterpreted because *Garvin v. Baker,* 59 So.2d 360 (Fla.1952), *State ex rel. Zuckerman-Vernon Corp. v. City of Miramar,* 306 So.2d 173 (Fla.App.1973), and *Broward County v. Coral Ridge Properties,* 408 So.2d 625 (Fla.App.1981) established the principle that the Commission had discretion in reviewing the Long Creek Subdivision plat application. An analysis of these cases fails to support the defendants' assertion that the plat approval process is discretionary in nature. In *Garvin,* the Commissioners denied approval of the plat because the streets were not sixty feet in width and the lots were too shallow. The city's ordinance required the streets to conform as nearly as practicable to existing streets and in no event should they be less than fifty feet[8]. Plaintiffs' proposed plat indicated street widths of 50 feet, where existing streets in the area were 60 feet wide. There was no ordinance concerning the depths of lots. The trial court held that it was proper to reject the plat on the basis of the ordinance governing street widths, but

---

**8.** The controlling Lake Worth ordinance read:

Section 2: Said land shall be so subdivided and platted or mapped so that the proposed streets or public ways shall conform as nearly as practicable to existing streets and public ways, in proximity to such tract of land.

Section 4: As a minimum requirement for streets, avenues and sidewalks, the plat shall dedicate a width of at least fifty feet, being at least six feet on each side thereof for sidewalks and at least thirty-eight feet intervening between sidewalks.

that it was improper to reject it on the basis of lot depths since this was not covered by the ordinance. It is pertinent to note that the court said:

> Should the city desire to effectuate some sound public policy within its authority, this should be done by duly enacted ordinances setting up standards to guide a citizen in carrying on his affairs. Otherwise, a citizen could act only subject to the unknown and uncertain views of a public official or several public officials, as experienced from time to time.

*Id.* at 362. The Florida Supreme Court affirmed noting that the lower court passed "upon the authority of the City by ordinance to require streets to be conformable as nearly as practicable to existing streets. The court held that the City had not abused its discretion in requiring the streets shown upon the plat to have a width of sixty feet in conformity with other streets with which it connected. There was no error in this finding..." The defendants argue that this holding means that the board had discretion in reviewing the plat application because it required a sixty-foot street width when the ordinance's language only required a fifty-foot width, ergo, if the board had no discretion in the plat approval process the court would have issued the writ, since the board denied the plat because the streets did not have sixty-foot widths. This argument misses the mark for two reasons. Plainly the language in the ordinance in question was in the disjunctive—it required a minimum of fifty-foot width *or* that the proposed streets conform as nearly as practicable to existing streets. Moreover, the "discretion" that the court was talking about was with respect to that exercised in enacting an ordinance for a valid purpose, not a discretion in the application of the ordinance. "It requires no citation of authority to establish the fact that a wide street changing into a narrow street, or a narrow street changing into a wide street, constitutes a hazardous traffic condition.... the changing of the width of streets and roads involves the public welfare and safety to a high degree, and public authorities having jurisdiction of such mat-

ters have a duty to perform in order to protect the public from hazardous and dangerous traffic conditions." *Id.* at 362.

Defendants' reliance on *Zuckerman* gives us little pause. A writ of mandamus filed by a developer to compel issuance of a plat approval was denied because at the time the city had not reviewed the plat or taken action since the developer's compliance with the applicable subdivision regulations were unresolved through no fault of the city. Moreover, in *Narco* the same court took pains to distinguish *Zuckerman* noting that in that case there were unresolved questions whether the plan met the zoning requirements. To make certain that *Zuckerman* did not impinge on the principles set forth in *Narco* the court added, "There are some rather broad statements in *Zuckerman* which might lead one to conclude that mandamus never lies to require approval of a plat. While *Zuckerman* is clearly correct on its facts, to the extent that it might be interpreted to hold that mandamus will never lie to require approval of a plat, we recede therefrom." 359 So.2d at 511. The exercise of discretion and judgment about which the court spoke is to determine whether a plan meets the zoning requirements. It is not a discretion to approve or disapprove a plan that does meet the requirements.

Defendants' reliance on *Coral Ridge Properties* is also misplaced. *Narco* was cited with approval, but mandamus was found not to be an appropriate remedy because the county contended that even though there was compliance with the requirements for filing a plat, nevertheless lack of access, in violation of Section 336.05(2), Florida Statutes, was an additional requirement that had not been met. The property owner disagreed that the statutory requirements were applicable. The court found that whether the county had misapplied or misapprehended the legal requirements for plat approval, i.e., whether in addition to the plat requirements the statute could be invoked, was a question properly dealt with by review because a merely erroneous decision would not support an

**1354**

application for mandamus. Plainly, *Narco* is neither overruled nor limited by *Coral Ridge Properties.*

 Defendants next assert that the Development Code, adopted April 30, 1981, after the rejection of plaintiffs' plat application on May 1, 1980 and after this litigation commenced, applies to the plaintiffs' plat application because it was the law existing at the time of the Commissioners' second decision of August 11, 1981. In its order of July 2, 1981 the district court made preliminary findings that the plaintiffs had apparently complied with all of the Subdivision Regulations and held that "Manatee County must base its approval or disapproval of plat applications upon the regulations and requirements contained in the Subdivision Regulations..." The court also found that the county had not specifically stated the reasons for disapproval of the plat application as required by the Manatee County Planning Act, and stated, "Because the County Commission did not articulate its reasons for disapproving plaintiffs' application, and because it does indeed appear from the record that the disapproval may have been based upon criteria not contained in the Subdivision Regulations, the County Commission should be and is afforded the opportunity to again consider plaintiffs' plat application *within the guidelines set forth above.*" (Emphasis added.)

In its final order the court found that "the plaintiffs' rights would be violated if new regulations are used to deny a plat application which complied with the regulations in effect at the time the plat application was filed." The court then proceeded to again review the county's rejection of the plat under the Subdivision Regulations and refused to consider the applicability of the Development Code.

The defendants point out that the Development Code was adopted not to defeat this litigation but was made necessary by the requirements of the Florida Local Government Comprehension Planning Act of 1975, Chapter 163.3161 *et seq.,* Florida Statutes (1981), known as LGCPA, which mandates that all local governments in Florida adopt comprehensive plans not later than July 1, 1981. Subdivision Regulations enacted or amended must be consistent with the adopted comprehensive plan. There is no question that plaintiffs' plat application does not meet the requirements of the new Development Code. It follows, defendants argue, that the land use ordinance can be amended during the pendency of a controversy, and that the controversy must then be determined on the basis of the amended law. *See State Etc. v. Oyster Bay Estates, Inc.,* 384 So.2d 891 (Fla.App.1980); *Lelekis v. Liles,* 240 So.2d 478 (Fla.1970); *City of Miami Beach v. 8701 Collins Ave.,* 77 So.2d 428 (Fla.1954). As we see it, however, these cases simply declined to apply the law of equitable estoppel when there was an absence of a factual basis for its application, a principle that is not open to question. But this line of authorities is inapposite here for several reasons.

First, we have a finding by the district court (with which we agree) that the prior denial or delaying action of the defendants was unlawful. It would therefore indeed be inequitable to permit the defendants to take advantage of a new law enacted while an application for plat approval, valid when filed, has been unlawfully delayed. *See Smith v. City of Clearwater,* 383 So.2d 681 (Fla.App.1980), *petition dismissed,* 403 So.2d 407 (Fla.1981); *Davidson v. City of Coral Gables,* 119 So.2d 704 (Fla.App.1960), *cert. dismissed,* 126 So.2d 739 (Fla.1961).

Second, the district court's order of July 2, 1981, made "preliminary findings ... that plaintiffs have complied with all of the Subdivision Regulations ... and that the defendants must base their approval or disapproval ... upon the regulations and requirements contained in the Subdivision Regulations." Since, however, the defendants had given no reason for their rejection of the application, as required by the Subdivision Regulations, the court gave the defendants the opportunity, within 45 days, to again consider plaintiffs' application "within the guidelines set forth above." The clear language of the district court's order leaves no doubt that it did not intend to

give the defendants *carte blanche* authority for a *de novo* review of plaintiffs' application. It simply gave the defendants the opportunity to do what they were required to do in the first place, i.e., give the reason, if any, why the plaintiffs' application did not conform to the Subdivision Regulations. The district court's final order confirms this.

Finally, under the provisions of the ordinance which enacted the Manatee Plan, the new requirements of the Plan and its implementing regulations were not applicable to land use applications filed with the county prior to April 30, 1981, the effective date of the Plan.[9] Pursuant to LGCPA, the Development Code implemented the Manatee Plan and is required to be consistent with it. Since the plaintiffs filed this plat application in February, 1980 they were grandfathered out of the new regulations in the Development Code.

For the foregoing reasons the district court was correct in rejecting the defendants' application of later enacted ordinances to deny plaintiffs' plat application.

We now turn to the defendants' claim of error in the refusal of the district court to find that certain Florida statutory provisions authorized them to reject plaintiffs' plat application because of inadequate road access to the proposed subdivision, and because adequate school facilities were not available or planned to be constructed.

Defendants argue that Section 336.05(2) Florida Statutes [10] gave them discretion, independently of the Subdivision Regulations, to deny the plat application because of the inferior condition of the Myakka-Wauchula County Road, the only access to the subdivision site. The district court held this to be an enabling statute rather than a source of

discretion, and therefore their reliance upon discretion, rather than on uniform standards was improper. Moreover, the district court found unpersuasive the defendants' argument that because the proposed subdivision was not connected with a completed highway sufficient for the anticipated traffic it failed to comply with both the statutes and the Subdivision Regulations. The court found "access" in both contexts not to require a completed road in advance of development.

■ The Subdivision Regulations contain specific and detailed requirements pertaining to access to a subdivision. They do not impose any requirements regarding the condition of roads *maintained by the county.*[11] In fact, they do not incorporate or in any way refer to any statutory provision. It is undisputed that the plaintiffs' proposed plat met the requirements of the Subdivision Regulations concerning access. Thus the narrow question is whether the statutes give the defendants discretion to deny a plat application because the connecting county road is, in their opinion, in a deteriorated and unsafe condition, even though the plat complies with the access requirements of the Subdivision Regulations. We agree with the district court that this is an enabling statute which would authorize a local government to establish specific land use standards, but it does not constitute an independent source of discretion. Were we to hold otherwise the statute would confer upon the defendants authority to grant plat approval to one and yet withhold it from another without guides of accountability, a result that would not meet the test of constitutionality. *See, e.g., Harrington & Co., Inc. v. Tampa Port Authority,* 358 So.2d 168 (Fla.1978); *Dickinson v. State,* 227 So.2d 36

9. Section 4(c) of Ordinance No. 80–4 which enacted the Manatee Plan provides in pertinent part:

Actions on applications for development permits which have been duly filed with the County of Manatee, its departments, or agencies, prior to the effective date of this ordinance shall not be subject to the prescriptive provisions of the Plan...

Section 4(b) of the Ordinance defines "prescriptive provisions" to include "land development regulations."

10. See Footnote 5.

11. Paragraph F of the Subdivision Regulations provides: "Access: No subdivision shall be approved unless its street system is connected to an arterial highway by a public road which is County or State maintained."

**1356**

(Fla.1969); *North Bay Village v. Blackwell,* 88 So.2d 524 (Fla.1956); *Drexel v. City of Miami Beach,* 64 So.2d 317 (Fla.1953); *City of Naples v. Central Plaza of Naples, Inc.,* 303 So.2d 423 (Fla.App.1974).

We are not unaware of the defendants' reliance on *Chase Manhattan Mortgage & Realty Trust v. Wacha,* 402 So.2d 61 (Fla. App.1981), in which, without discussion, in an alternative holding, the court affirmed the denial of a site plan, without prejudice, "on the basis of inadequate access" under Section 336.05(2) Florida Statutes. There is no discussion of the relationship of this statute to any specific standards the county may have had regarding access, or the applicability of such statutes when specific subdivision regulations exist. There is also no discussion whether the rejected site complied with the specific access requirements. Under these circumstances we are unpersuaded that the statute gives the defendants independent discretion to interpret what is "adequate and safe" and impose *ad hoc* requirements regarding the condition of the county road adjacent to the proposed subdivision.

Similarly, the defendants, relying on Section 235.193 Florida Statutes,[12] refused plaintiffs' plat application finding that the public school facilities were not adequate to serve the proposed development.

Without belaboring the point we reject this argument for the same reasons that we explicated concerning the "access" statute.

There was no genuine dispute of material fact regarding plaintiffs' compliance with the requirements of the Subdivision Regulations. Under these circumstances the defendants had an administrative duty to approve the plaintiffs' proposed plat and their refusal to do so was a violation of the plaintiffs' guarantee of due process. See *Washington ex rel. Seattle Trust Title Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928), *Hornsby v. Allen,* 326 F.2d 605 (5 Cir.1964). The entry of summary judgment for the plaintiffs was proper.

AFFIRMED.

12. See Footnote 6.