**MOUNT SINAI MEDICAL CENTER OF GREATER MIAMI, INC., a Florida non-profit corporation, Plaintiff,**

v.

**The CITY OF MIAMI BEACH, a political sub-unit of Dade County, Florida, Defendant.**

No. 89–0087–CIV.

United States District Court, S.D. Florida.

Jan. 30, 1989.

Aaron Podhurst, Victor M. Diaz, Jr., Podhurst, Orseck, Josefsberg, Eaton, Mead-ow, Olin & Perwin, P.A., Miami, Fla., for plaintiff.

Arnold M. Weiner, City Atty., City of Miami Beach, Miami Beach, Fla., and Ira M. Elegant, Buchbinder & Elegant, P.A., Miami, Fla., for defendant.

## MEMORANDUM OPINION

SCOTT, District Judge.

Plaintiff Mount Sinai Medical Center of Greater Miami, Inc. (Mt. Sinai) seeks a temporary injunction prohibiting Defendant City of Miami Beach (City) from enforcing Zoning Ordinance 1891, Section 6–14A & B, as interpreted by Opinion No. 88–30 issued by the City Attorney on November 8, 1988. Plaintiff seeks this relief pursuant to 42 U.S.C. § 1983 [1] claiming that (a) the City deprived Mount Sinai of its property rights without due process of law and (b) the City violated equal protection. Plaintiff also asserts that the City is estopped from enforcing the ordinance.[2] The City opposes the relief. Following appropriate notice, an emergency hearing occurred on Mt. Sinai's application for temporary injunction on January 20 and 23, 1989. Both parties were provided a full and fair opportunity to offer evidence and argument. These findings and conclusions follow pursuant to Federal Rule of Civil Procedure 52(a).

## I.

### BACKGROUND

Mt. Sinai is a non-profit health care provider located in the City of Miami Beach, Florida. The City of Miami Beach is a municipal corporation organized under the laws of the State of Florida.

In August, 1988, Mt. Sinai applied for a building permit to construct a multi-story structure adjacent to the existing hospital facilities. The application stated that it was for a "staff tower and diagnostic clinic." On August 16, 1988, Mt. Sinai was issued a building permit by the City. Based upon receipt of its building permit, Mt. Sinai entered into binding contracts for

---

1. Federal jurisdiction exists pursuant to 28 U.S.C. § 1343.

2. The latter claim is based upon pendent jurisdiction.

the construction of the staff tower. Mt. Sinai began to negotiate with its medical staff to rent office space in the tower.

Mt. Sinai is located on land zoned "RH Hospital District." The City's Zoning Ordinance 1891, in Section 6–14A & B, defines the permitted uses of land zoned RH Hospital District. Section 6–14(B)(2) provides that permitted use within a zoned hospital district, in addition to the hospital, includes:

> Accessory hospital facilities, consisting of laundry, centralized services, educational and research facilities, recreational facilities, *staff offices*, parking structures and lots. (Emphasis provided.)

That section further provides that such appurtenant structures must be "subordinate to the main use and must be an integral part of hospital operations."

On November 8, 1988, the City Attorney of Miami Beach issued Opinion No. 88–30, interpreting City of Miami Beach Zoning Ordinance 1891. The City Attorney opined that "staff offices" as used in the zoning ordinance means that "only physicians employed full-time by a hospital within the RH District may have office space within the hospital." The basis of the opinion was that other physicians are not "an integral part of hospital operations."

The City has advised Mt. Sinai that the staff office under construction may only be occupied in a manner consistent with the City Attorney's opinion letter. The City did not provide Mt. Sinai with an opportunity to challenge the opinion letter through hearing or appeal.

## II.

### TESTIMONY

At the evidentiary hearing, Mt. Sinai called four witnesses: Fred Hirt, Leonard Abess, Jr., Gary Gerson and David Paul. The City responded with three witnesses: Michael Saclarides, Joe Grant and Rob Parkins. We review their testimony in light of our role as fact-finder.[3]

Fred Hirt is President of Mt. Sinai Medical Center and chief executive officer. He has an extensive background in hospital administration. Hirt offered the major testimony for the Plaintiff.

The staff tower has been a long term project of Mt. Sinai. Its construction is an integral part of a plan to make Mt. Sinai into a major teaching hospital with operating ties to the University of Miami School of Medicine. Acquiring and keeping a top-flight medical staff is essential to the success of this plan. Good doctors insist on having close access to treatment facilities, patients, medical students and other doctors. This is the purpose behind placing the staff tower adjacent to the hospital and housing the medical staff in one compact unit.

The opinion letter is a complete obstacle to this plan. The City Attorney's interpretation of Zoning Ordinance 1891 means that only physicians who are full-time employees of the hospital may occupy space in the staff tower. Physicians who are on Mt. Sinai's staff as credentialed doctors, but who are not full-time employees of the hospital, cannot occupy space in the staff tower. The latter group encompasses the vast majority of physicians associated with the hospital.

As a result of the City's interpretation of Zoning Ordinance 1891, Mt. Sinai cannot obtain permanent construction funding from a lending institution. Moreover, the hospital cannot lease space in the tower because physicians who are not full-time employees understandably will not negotiate until the zoning question is resolved. This situation has created an urgent problem for Mt. Sinai.

The hospital has spent six million dollars to date on the staff tower. The funding has come from the hospital's working capital, because permanent funding has not been forthcoming. As a result, other hospital projects may suffer cut-backs. One

---

**3.** *See Anderson v. City of Bessemer City, N. Carolina,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

such project is free medical care to the indigent, poor and aging of Miami Beach.

Hirt testified that Mt. Sinai provides one-third (34%) of all free medical care in Dade County, excluding the county financed Jackson Memorial Hospital. Additionally, Mt. Sinai is the source of 95% of all free medical care on Miami Beach. Without obtaining immediate permanent financing, the hospital cannot continue to provide these free medical services to the community. David Paul, Chairman of Centrust Bank and a leading civic leader in health care, agreed with Hirt's assessment of the "devastating effect on health care in Dade County," if Mt. Sinai were to close its doors to indigent patients.

Gary Gerson is a certified public accountant and Chairman of the Board of Mt. Sinai. He agreed with Hirt that six million dollars had been spent on the staff tower. Gerson testified that if permanent financing is not obtained for the tower project, the hospital's only alternative is to cut free medical care.

Gerson and Leonard Abess, Jr., Chairman of City National Bank, discussed financing this project. Abess told Gerson that he would attempt to arrange the permanent financing. However, as a condition to the financing, the City's interpretation of Zoning Ordinance 1891 must be rescinded. This remains the only stumbling block to City National's funding.

One critical piece of testimony remains to be discussed. Mt. Sinai's decision to commence this project was predicated upon the knowledge that two other hospitals on Miami Beach have similar staff towers. Hirt testified that sister institutions, South Shore Hospital and St. Francis Hospital, received zoning approval from Miami Beach to construct staff towers in 1981 and 1986 respectively; that these towers were occupied by physicians other than full-time staff; and that this knowledge led to Mt. Sinai's decision to construct its own staff tower. Indeed, Hirt added that without the staff tower, Mt. Sinai would not be able to attract and keep good physicians. Gerson

agreed with Hirt's testimony and confirmed the loss of staff physicians to St. Francis.

The City's testimony was short and direct. Michael Saclarides, a long time code enforcement officer with the City of Miami Beach, testified that the City had notified St. Francis in 1987 of a code violation relating to the occupants of its staff tower. On cross-examination, however, he admitted that since that time the City had done nothing to enforce the code. Rob Parkins, the City Manager, testified that his duties included zoning code enforcement and that the City would be adversely impacted by a staff tower occupied by physicians who were not full-time employees of the hospital. Joe Grant, associated with South Shore Hospital, offered ambiguous evidence concerning the occupancy of its tower. On the one hand, Grant testified that a Doctor Hubert Rosomoff occupied space in its tower and that he was not a full-time physician with South Shore; on the other hand, Grant added that he had no lease. With that said, we pass on to the legal considerations.

### III.

### LEGAL CONSIDERATIONS

As is normal in requests for preliminary injunctions, we commence with a discussion of the requirements long established in this Circuit in *Buchanan v. United States Postal Service,* 508 F.2d 259 (5th Cir.1975) and *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567 (5th Cir.1974).[4] To secure a preliminary injunction, a plaintiff must establish four factors: (A) a substantial likelihood that the plaintiff will prevail on the merits (B) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted (C) that the threatened injury to the plaintiff outweighs the harm to the defendant and (D) that the grant of an injunction will not disserve the public interest. It is also frequently stated that a preliminary injunction is an extraordinary remedy, but, the grant

---

**4.** *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc) which adopted as

precedent Fifth Circuit decisions decided prior to October 1, 1981.

or denial of a preliminary injunction rests in the sound discretion of the district judge. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985) (cases cited). An injunction may be reversed on appeal only for abuse of discretion by the district judge. *U.S. v. State of Alabama*, 791 F.2d 1450, 1458 (11th Cir.1986).

### A. IS THERE A SUBSTANTIAL LIKE-LIHOOD THAT PLAINTIFF WILL PREVAIL ON THE MERITS?

The City contends that this case is nothing more than a local zoning dispute dressed up in civil rights clothing. The City argues that federal court is not a proper forum for this local dispute. Procedurally, the City suggests that this case should be remanded to state court.[5] On the substantive issue, Miami Beach states its interpretation of the zoning code is correct; but, in any case, it is entitled to great weight. *See* 8 McQuillan *Municipal Corporations* § 25.74 (3d ed. rev.). The City also contends that Plaintiff cannot establish color of law. Plaintiff points to opinions by this Court in *Group Health, Inc. v. Schweiker*, 549 F.Supp. 135 (S.D.Fla.1982) and *Organized Fishermen of Florida v. Andrus*, 488 F.Supp. 1351 (S.D.Fla.1980). For all these reasons, the City contends that Mt. Sinai cannot sustain its hearing burden for a preliminary injunction.

#### 1. *Section 1983.*

■ A corporation, such as Mt. Sinai, can sue under § 1983 on its own behalf. *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9 (1st Cir.1979), *vacated on other grounds*, 454 U.S. 807, 102 S.Ct. 81, 70 L.Ed.2d 76 (1981). In turn, a municipality, like the City of Miami Beach, may be sued "like every other § 1983 'person'" for "constitutional deprivation visited pursuant to governmental custom" as well as deprivation visited pursuant to a "policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." *Monell v. New York*

*City Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). This includes a single decision "by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Where municipal policy leaves the final decision to the official's discretion, his acts represent official policy. *Messick v. Leavins,* 811 F.2d 1439, 1443 (11th Cir.1987).

By the plain terms of § 1983, two elements are required: First, Plaintiff must allege a deprivation of a federal right. Second, the person who deprived Plaintiff of the right must have acted under color of law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

■ In the present case, the City Attorney's opinion letter was executed in response to an official inquiry by the City Manager. The City thereafter conveyed that position to Mt. Sinai. In his November 30, 1988 correspondence, the City Manager forwarded Opinion No. 88–30 to the Chief Executive of Mt. Sinai and added "your determination of the procedures we might follow in order to ensure that we don't run afoul of the Zoning Code of the City of Miami Beach" would be appreciated. Opinion No. 88–30, taken in combination with the execution of that policy as demonstrated by the City Manager's correspondence, is clearly binding upon the City. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The lack of opportunity to challenge the opinion letter further corroborates that the actions of the City Attorney and City Manager constitute official policy. For the City to now contend that these actions do not constitute such policy or that they were not performed

---

**5.** Technically, the City's suggestion is incorrect. Since this case was initiated in federal court, it cannot be remanded. However, it could be dismissed without prejudice for lack of jurisdiction, with the suggestion that it be refiled in an appropriate state forum.

under color of law for § 1983 purposes are disingenious at best. We now turn to the deprivation of right question.

Mt. Sinai makes twin contentions under Section 1983: First, it claims deprivation of due process. Second, it claims violation of equal protection. Such contentions raise serious and sensitive questions that require careful analysis.

### a. Due Process Claim

■ At first blush, the City's position is attractive. We fully concur that "federal courts do not sit as a super zoning board or a zoning board of appeals." *Raskiewicz v. Town of New Boston,* 754 F.2d 38, 44 (1st Cir.1985). Indeed, we have no intention of invading the traditional police power of a municipality to regulate its citizens through appropriately enacted and uniformly applied zoning laws.

Nonetheless, over sixty years ago, the Supreme Court recognized that cases may arise which require intervention in order to protect federally protected rights in zoning disputes. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). Further precedent has followed which recognizes that zoning actions tainted with arbitrariness, capriciousness and unfairness give rise to a constitution claim. *Arlington Heights v. Metropolitan Housing Development,* 429 U.S. 252, 263, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *see South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.1974) (en banc). An examination of recent authority from representative federal circuits clearly demonstrates that courts have found constitutional claims "in various forms of official permit processing actions." *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir. 1986); *Shelton v. City of College Station,* 754 F.2d 1251, 1256 (5th Cir.1985); *Scott v. Greenville County,* 716 F.2d 1409 (4th Cir. 1983). But, the question remains, do the facts here give rise to such a claim. To help us resolve that issue, we turn to precedent from our own Eleventh Circuit.

Our research reveals several recent Eleventh Circuit cases of precedential value.

*A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d 1483 (11th Cir.1988); *Hynes v. Pasco County, Fla.,* 801 F.2d 1269 (11th Cir.1986); *Southern Co-op. Development Fund v. Driggers,* 696 F.2d 1347 (11th Cir. 1983); *Wheeler v. City of Pleasant Grove,* 664 F.2d 99 (5th Cir. Unit B.1981). These opinions teach us that property rights, which include a property owner's reliance upon issued building permits, are protected rights under the Fourteenth Amendment. *A.A. Profiles, Inc. v. City of Fort Lauderdale,* 850 F.2d at 1488. They further teach that revocation of such a building permit may be "arbitrary and capricious" and "a confiscatory measure" violative of the property owner's Fourteenth Amendment right. *Wheeler v. City of Pleasant Grove,* 664 F.2d 99–100. Finally, they teach that under such circumstance, injunctive relief will lie.

In the present case, the City issued a building permit with knowledge of the intended use as a staff tower. In reliance upon the permit, Mt. Sinai incurred obligations and expenses. Specifically, Mt. Sinai entered into binding construction contracts. To date, it has spent, out-of-pocket, six million dollars on the project. The hospital has commenced negotiations with potential occupants. Finally, the overall operation of the hospital, and indeed the community may suffer. Mt. Sinai has presented formidable proof that indigent care may be severely cut back in the City of Miami Beach.

Notwithstanding such reliance, the City thereafter interpreted Zoning Ordinance 1891, through Opinion No. 88–30, in such a manner as to invalidate the previously issued permit by prohibiting occupancy. No pre-deprivation hearing was provided; no appeal followed. The actions were final. The Court concludes based upon the evidence adduced at the preliminary injunction hearing that Mt. Sinai has carried its burden in demonstrating a due process violation.

### b. Equal Protection Claim

■ Secondly, Mt. Sinai alleges that the City's treatment to it was disparate from the treatment rendered to sister institu-

tions, South Shore Hospital and St. Francis Hospital. Plaintiff argues that the City unequally applied a facially neutral ordinance. Specifically, Plaintiff claims selective enforcement. Plaintiff cites to *Southern Co-op Development Fund v. Driggers*, 696 F.2d 1347, 1352 (11th Cir.1983).

The test for determining an equal protection violation has been most recently reiterated by this Circuit in *E & T Realty v. Strickland*, 830 F.2d 1107, 1112–1113 (11th Cir.1987). That opinion makes clear that to prevail on a claim for unequal application of a facially neutral statute, *see McClesky v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), there must be a finding of intentional discrimination. "Mere error or mistake in judgment when applying a facially neutral statute does not violate the equal protection clause." Furthermore, "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." *Id.*

Accordingly, this Court can conclude that the City violated due process, without reaching the issue of equal protection. *See Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982). On this record, we are not prepared to make a finding of intentional discrimination. This issue, we will leave to another day. At that time, following discovery, we can investigate the factual scenario behind the issuance of the opinion letter, the conduct of the City vis-a-vis Mt. Sinai and its sister institutions, and, other questions related to the "decisionmaker(s')" selection of "a particular course of action" and "its adverse effects" upon the Plaintiff. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). Such an inquiry may be conducted by both direct and circumstantial evidence. *Arlington Heights v. Metropolitan Housing Development*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

### c. A Ghost From The Past

One final legal precedent is deserving of discussion on these topics. While not cited by either party, our independent research reveals an opinion by the Fifth Circuit Court of Appeals, which is binding upon this Court. While we dislike using the much touted phrase "on all fours," the Court is impressed with its similar factual and legal backdrop, including issues, relief sought and even the same Defendant. In *City of Miami Beach v. Benhow Realty*, 168 F.2d 378, 380 (5th Cir.1948), the Court of Appeals affirmed the granting of a preliminary injunction against the enforcement of a City of Miami Beach ordinance. In that case, much like the instant one, the Plaintiff alleged that the City violated due process and equal protection by amending a city ordinance after issuance of a building permit and commencement of construction. The effect of the amended ordinance was to shut down the project. The Court held:

> The granting of a permit to appellees and the expenditure of moneys on the faith thereof, did not tie the hands of the City Council of Miami Beach or prevent it from exercising its police power thereafter with respect to the subject matter of the permit, but it did make the ordinance it passed subject to investigation by the Courts with a view of determining whether said ordinance "is a lawful exercise of its police power or whether under the guise of enforcing police regulations there had been an unwarranted and arbitrary interference with constitutional rights to carry on a lawful business, make contracts, or use and enjoy property." *Id.*

The Court concluded that the judicial investigation warranted the issuance of an injunction against enforcement of the amended ordinance.

In the present case, while the City did not pass an amended ordinance, it accomplished the same result through the interpretation of the zoning ordinance by the opinion letter. Indeed, the actions of the City in this case are even more suspect for constitutional purposes since the actions were wholly performed without input or even notice to the party affected, until it was a fait accompli. In *Benhow*, at least, the legislative process of seeking an amendment was utilized with its attendant

**1532**

opportunity to be heard. Here, that procedure was not afforded, yet the same result was accomplished. In short, we find the present case an even more compelling situation. While we are reluctant to conclude at this early stage that history will repeat itself, we nonetheless find that Mt. Sinai has proved that there is a substantial likelihood that it will prevail on the due process claim. As the Court observed in *Benhow,* "property rights cannot be wrongfully destroyed by arbitrary enactment," quoting *Dobbins v. Los Angeles,* 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169, and, it should be added, neither can they be wrongfully destroyed by an arbitrary and unilateral interpretation.

### 2. *Equitable Estoppel Claim.*

■ Plaintiff also contends that the City is equitably estopped under Florida law. Equitable estoppel may be invoked against a municipality where a property owner in good faith upon some act or omission of the government has made a substantial change in position or has incurred expenses such that it would be highly inequitable and unjust to destroy the right that he has acquired. *Sakolsky v. City of Coral Gables,* 151 So.2d 433 (Fla.1963); *City of Jacksonville v. State,* 158 Fla. 98, 27 So.2d 727 (1946). As we observed earlier, issuance of a building permit constitutes such a property right. Thus, a city may be equitably estopped to enforce a change in zoning regulations against one who has substantially altered his position in reliance on the original regulation and a building permit issued thereunder.

The City argues that Mt. Sinai was aware of its interpretation of the ordinance prior to issuance of the permit and, therefore, estoppel cannot lie. *See Sakolsky v. City of Coral Gables,* 151 So.2d at 435–36. Plaintiff counters that "[a]lthough it is true that in 1968 and in 1979, Mt. Sinai sought a specific variance from the City of Miami Beach to amend Zoning Ordinance 1891, ... in order to construct on-campus office space, these historic facts are irrelevant to the present case" because of the City's action vis-a-vis South Shore Hospital and St. Francis Hospital from 1981 to the

present. *See City of Miami Beach v. 8701 Collins Ave, Inc.,* 77 So.2d 428 (Fla.1955).

Suffice it to say on the present record Plaintiff has established a sufficient showing to invoke equitable estoppel against the City, in light of Defendant's largely unexplained conduct since 1981 involving the sister institutions. As in the case of the 1983 issues, we eagerly await the final evidentiary hearing so that these questions may be further judicially explored. In the interim, however, we are convinced that Mt. Sinai has met its burden in demonstrating that there is a substantial likelihood that it will prevail on the section 1983 due process claim, as well as under the doctrine of equitable estoppel. We now turn to the other requirements for a preliminary injunction.

**B. IS THERE A SUBSTANTIAL THREAT THAT PLAINTIFF WILL SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS NOT GRANTED?**

■ Lest there be much further discussion, we answer the question in the affirmative and point to eight findings, *see Anderson v. City of Bessemer City, N. Carolina,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985):

1. The people of Dade County and, in particular, Miami Beach, will suffer a substantial cut-back in indigent health care;

2. Mt. Sinai will suffer the loss of six million dollars;

3. Mt. Sinai cannot lease space in the tower;

4. Mt. Sinai cannot obtain permanent construction funding;

5. Mt. Sinai will not be able to honor its previously executed construction contracts;

6. Mt. Sinai cannot attract quality physicians;

7. Mt. Sinai faces the loss of staff physicians to other hospitals; and

8. Mt. Sinai cannot complete its long term plan of converting the hospital into a much needed teaching institution.

Each of these potential sources of injury are a sufficient basis to find the irreparable injury requirement satisfied, but, taken as a whole, they present a compelling picture which this Court cannot ignore. In comparison to the scenario of doom which Mt. Sinai paints, the City offers little retort and no contradictory evidence. In short, it is clear that this prong has been satisfied by Mt. Sinai.

### C. DOES THE THREATENED INJURY TO THE PLAINTIFF OUTWEIGH THE HARM TO THE DEFENDANT?

■ In response to Mt. Sinai's well-established proof of irreparable injury, the City's only source of potential harm is contained in the testimony of its City Manager. Rob Parkins testified that an injunction would adversely impact the City's ability to enforce its zoning ordinances. No supporting reasons were offered.

In any case, we believe this question is quite adequately addressed in the Memorandum of Mt. Sinai:

> For over seven years, the City of Miami Beach has acquiesced in allowing South Shore Hospital and St. Francis Hospital to occupy their office buildings with physicians who are not fulltime employees of those hospitals. The City enforcement officer conceded in his testimony that the City fully expects that these hospitals will be successful in amending Zoning Ordinance 1891, Sections 6–14 A & B, and that this is why the City has not followed up on its notices of violation to South Shore and St. Francis Hospitals. If this is true, what possible harm could result to the City of Miami Beach from this Court enjoining the selective enforcement of City Attorney Opinion No 88–30 against Mt. Sinai? Any possible suggestion of irreparable injury, or countervailing concern, that the City might advance is contradicted by the fact that South Shore and St. Francis Hospitals have been allowed to engage in these practices for over seven (7) years without the City complaining.

We agree and therefore conclude that any harm to the City is negligible in comparison to the irreparable injury faced by Mt. Sinai. This element is likewise satisfied. *See Prodoctos Carnic, S.A. v. Central American Beef and Seafood Trading Company,* 621 F.2d 683 (5th Cir.1980).

### D. WILL THE GRANTING OF AN INJUNCTION DISSERVE THE PUBLIC INTEREST?

■ The Court's answer to this question can be fairly surmised from our previous findings. The granting of an injunction will not be a disservice to the public interest. Indeed, we have every indication to believe that the failure to grant the injunction will act as a critical blow to the public welfare of Dade County. In this day of health care crises and ever shrinking resources, Mt. Sinai provides 34% of free health care to the indigent of Dade County, excluding Jackson Memorial Hospital. More specifically, Mt. Sinai is almost the only source of free medical care to the aging and needy of Miami Beach. For this Court to close its eyes, and let the matter take its course, would be to ignore the plight of those needy individuals. Moreover, we are somehow chagrined by the City's cavalier response to such a serious question. But, be that as it may, we easily conclude that Mt. Sinai has met its burden on this fourth and final requirement for the issuance of a temporary injunction.

### IV.

### CONCLUSION

We are hopeful that Mt. Sinai and the City will find an alternative method for resolution of their dispute within the next sixty days. However, in the event that scenario does not come to pass, it is ordered and adjudged as follows:

1. Plaintiff's Motion for Preliminary Injunction is granted against the City of Miami Beach's enforcement of Ordinance 1891, Section 6–14 A & B, as interpreted by Opinion No. 88–30 issued by the City Attorney. This order is binding upon the parties to the action, their officers, agents, servants, employees, and attorneys. The par-

ties shall effectuate actual notice upon these individuals. *See* Fed.R.Civ.P. 65(d).

2. The Court finds that Plaintiff has met its burden in establishing "that unless the City of Miami Beach is enjoined from enforcing said ordinance ... Plaintiff will suffer irreparable injury amounting to a taking of their property in violation of the due process clause of the Fourteenth Amendment." *City of Miami Beach v. Benhow Realty,* 168 F.2d 378, 380 (5th Cir.1948); *see United States v. State of Alabama,* 791 F.2d 1450, 1458 (11th Cir. 1986).

3. In order to expedite disposition of this matter to final hearing, but also in order to permit the parties full and fair opportunity to conduct discovery, the following schedule is ordered:

a. The parties shall produce a preliminary witness list and exhibit list within ten days.

b. The parties shall serve requests for production within ten days.

c. The parties shall agree on a discovery schedule within fourteen days.

d. All discovery shall be completed within sixty days.

e. Expert resumes and summary of testimony shall be submitted within thirty days.

f. All motions shall be filed within forty-five days.

g. The parties shall meet within fifteen days to discuss alternate ways of resolution. A status report shall be filed within thirty days.

h. The Court will schedule a pretrial conference by separate order.

i. The parties shall submit trial memoranda within sixty days.

j. The parties shall submit a fully executed pretrial stipulation as contemplated by the local rules.

k. This case is placed on the trial calendar commencing April 3, 1989.

4. Pursuant to Federal Rule Civil Procedure 65(a)(2), the testimony adduced at the preliminary injunction hearing will be incorporated at the final hearing.

DONE and ORDERED.